[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 28, 2009
THOMAS K. KAHN
CLERK

No. 07-10373
_____

D.C. Docket No. 04-00761-CV-ORL-28DAB

DAVID ACOSTA,

Plaintiff-Appellant,

versus

MARIE D. CAMPBELL, GREGG
DREILINGER, LAW OFFICES OF
DAVID J. STERN, P.A.,
CITIMORTGAGE, INC., CITIBANK,
FSB, IMELDA W. LAY, MORTGAGE
CAPITAL ASSOCIATES, INC., JAY
M. STEREN, and RESIDENTIAL
FUNDING CORP.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 28, 2009)

Before WILSON and PRYOR, Circuit Judges, and MIDDLEBROOKS,* District Judge.

_____

* Honorable Donald M. Middlebrooks, United States District Judge for the Southern District of Florida, sitting by designation.

PER CURIAM

David Acosta, Appellant, appeals *pro se* the district court's grant of summary judgment against Appellant and in favor of Defendants-Appellees, attorneys Marie D. Campbell and Gregg Dreilinger; the Law Offices of David J. Stern, P.A. (the "Law Office"); Citimortgage, Inc. ("Citimortgage"); Citibank, FSB ("Citibank"); Mortgage Capital Associates, Inc. ("MCA"); Residential Funding Corp.; Jay M. Stern, president of MCA; Imelda W. Lay, an employee of MCA; and John Does 1-20, in Appellant's *pro se* action under the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; the Florida Civil Remedies for Criminal Practices Act ("Florida RICO"), Fla. Stat. § 772.101 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; Florida's Fair Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 501.201 *et seq*.; and the Florida Unfair and Deceptive Acts and Practices Act ("FDUPTA"), Fla. Stat. § 501.201 *et seq.*

**Background**

In January of 2000, Petitioner, David Acosta, while living in Pennsylvania, began the process of entering into two purchase-money loan transactions to finance the purchase of residential property located in Longwood, Florida. [Red Br. 3]. MCA, a correspondent lender for CitiMortgage and Citibank originated both of the loans: the first for $460,000, and the second for $57,000. Id. MCA and Acosta closed

2

the first Mortgage on March 24, 2000, and MCA assigned the first mortgage loan to CitiMortgage. [Red Br. 3]. The assignment of the first mortgage was recorded on April 5, 2000. Id.

Thereafter, MCA sent a letter to Acosta requesting that he execute a "Florida specific note" for the first mortgage, advising him in a subsequent letter on April 18, 2000, that "[Citimortgage] will return to us the note previously signed. . .". Id. Appellant executed a new promissory note for $460,000 on April 20, 2000 in favor of MCA. [Bl. Br. 7]. At some point after the closing but prior to February 2003, CitiMortgage endorsed the promissory note securing the first mortgage to Citibank, however; CitiMortgage did not deliver the assignment of the Mortgage to Citibank until September 7, 2004. [Bl. Br. 7, Red Br. 5]. In February of 2003, Acosta stopped paying his mortgage because his "closer examination of the [loan] transaction revealed fraud," and has not made a payment thereafter on the first mortgage. [Bl. Br. 8, Red. Br.4].

On July 11, 2003. CitiMortgage sent a letter to Acosta advising that the first mortgage was in default, and that the loan was referred to the Law Office for the commencement of foreclosure proceedings. [Red. Br. 5, Bl. Br. 8]. On July 11, 2003, Law Office "delivered for filing" a foreclosure Complaint on behalf of Citimortgage against Acosta in state court. [Red Br. 5]. On July 12, 2003, Acosta sent a certified

letter, with a certificate of service dated July 14, 2003, to the Law Office providing his "Notice of Dispute and Debt Validation Request" pursuant to 15 U.S.C. § 1692g. [Red. Br. 5, Bl. Br. 9]. On July 16, 2003, the Clerk's office docked the foreclosure Complaint, with leave to amend. [Red. Br. 5]. At that time, CitiMortgage had not yet assigned the mortgage to Citibank, therefore, the foreclosure action was instituted in the name of the mortgagee, CitiMortgage. [Red. Br. 40]. The foreclosure action was later dismissed, without prejudice, because Citibank was deemed a non-joined indispensable party. [Red. Br. 41]. Citibank then appeared as plaintiff in the re-filed foreclosure action as the hold and owner of both the note and the mortgage. Id.

On or about May 21, 2004, Acosta instituted this federal court action against Law Office. An exhaustive recitation of the extensive procedural history of the federal action is not necessary. Instead, we will set forth the disposition of Acosta's claims in the Third Amended Complaint against the parties who ultimately became the Defendants-Appellees.

The Third Amended Complaint set forth five counts:  Count I alleged violations of RICO, 18 U.S.C. §§ 1961, 1962 *et seq.*; Count II alleged violations of Florida RICO; Count III alleged violations of the FDCPA, 15 U.S.C. § 1692, *et seq.*; Count IV alleged a violation of the FCCPA, Fla. Stat. § 559.55, *et seq.*; and Count V alleged a violation of FDUPTA, Fla. Stat. § 501.201 *et seq.* On August 22, 2005, the

Law Office and Citimortgage filed motions to dismiss the Third Amended Complaint, and on October 3, 2005, Citibank filed its motion to dismiss the same. On September 19, 2005, Magistrate Judge Baker heard oral argument on Citimortgage and the Law Office's motions to dismiss. On October 26, 2005, Residential Funding Corporation filed its motion to dismiss the Third Amended Complaint. MCA never filed a motion to dismiss.

On November 4, 2005, Magistrate Judge Banker issued a Report and Recommendation ("R&R"), addressing the motions filed by Citimortgage, Inc., the Law Office, and Citibank, FSB. The R&R did not address the motions filed by Defendant, Residential Funding Corporation, but recommended dismissal against both Residential Funding Corporation and MCA. The Report and Recommendation recommended the dismissal of Counts I (RICO), II (Florida RICO), and V (FDUTPA), with prejudice, and recommended that most claims in Counts III and IV (FDCPA and FCCPA claims) be dismissed.

Overruling Acosta's objections to the R&R, on January 19, 2006, Judge Antoon adopted the Magistrates Report and Recommendation in full, dismissing all but two of petitioner's claims, as stated above. The two issues that remained were: (1) whether defendants violated the FDCPA when Defendants continued with mortgage foreclosure proceedings (filing the service of the complaint) even though

they had allegedly had already received correspondence from Petitioner disputing the debt; and (2) whether defendants violated the FDCPA for failing to communicate to credit reporting agencies that the debt owed by Plaintiff was disputed. Defendants moved for summary judgment on Petitioner's remaining claims on June 16, 2006. The Magistrate judge's Report and Recommendation recommended granting summary judgment in favor of Defendants and against Acosta on both claims. Judge Antoon adopted the Report and Recommendation on December 22, 2006. Judgment was entered in favor of MCA, Jay M. Steren, Imelda W. Lay and Residnetial Funding Corporation on December 22, 2006, and in favor of the Law Office, Citimortgage, and Citibank on December 26, 2006. Acosta appeals from this judgment.

**Standard of Review**

This Court reviews *de novo* both a district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim, and a district court's grant of summary judgment. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). We liberally construe *pro se* pleadings. Butler v. Prison Health Services, Inc., Slip Copy, 2008 WL 4291321, * 1, citing Brown v. Johnson, 387 F.3d 1244, 1350 (11th Cir. 2004).

However, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citation omitted). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1964-65 (citations omitted). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. Hishon v King & Spaulding, 467 U.S. 69, 73 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. See Arrington v. Cobb County, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

7

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in their favor. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Further, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion. See Earley, 907 F.2d at 1081. The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. See Celotex, 477 U.S. at 322.

**Discussion**

After careful review of the record, we find no reason to disturb the well-reasoned opinions of the district court granting summary judgment in favor of defendants and against Acosta on the remainder of Petitioner's FCCPA and FDCPA

8

claims. We also affirm the district court's dismissal with prejudice of Petitioner's FDCPA claims, federal RICO claims, Florida RICO claims, Florida Consumer Collection Practices Act ("FCCPA") claims, and Florida Deceptive and Unfair Trade Practices Act ("FDCPA") claims.

However, one claim raised by Appellant requires more discussion. Appellant claimed that the defendants, Citimortgage, Citibank, and the Law Office, violated 15 U.S.C. § 1692c(b) by "communicating with a third-party information about the debt without prior consent of the consumer." [Third Amended Complaint, ¶133(c)]. Specifically, Acosta argues that on October 2, 2003, Dawn Desmond and Claudia Bunge, Desmond's supervisor, both employees of the Law Office, sent a letter with information about Acosta's alleged debt to Marshall C. Watson, P.A., attorneys for another of Acosta's creditors. [R 103 ¶ 121-23.] The communication was a confidential payoff letter provided at the request of the Watson, P.A. law firm, attorney for the MCA, the second mortgage holder of the Florida residence, that was a defendant in the foreclosure action and a co-defendant in the present action. [Red Br. 36-37].

Under the FDCPA:

Except as provided in section 804 [15 USCS § 1692b], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to

9

effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).

The district court adopted the magistrate judge's Report and Recommendation that found that "because it was a confidential payoff letter provided at the request of Watson, P.A., who is the attorney for another creditor, the second mortgage holder, involved in the foreclosure," and "[a]ttorneys for creditors are excluded from application of the FDCPA," Acosta failed to state a claim. The Report and Recommendation further stated that "as a practical matter, in a state foreclosure action, the first and second mortgage holders and other creditors must be able to communicate regarding the balance or settlement of the outstanding mortgages." [R 132 p. 24]. We agree that the letter sent to the attorney for the second mortgagee is not an action proscribed by the FDCPA.

Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits unfair or

unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures. 15 U.S.C. §§ 1692d, 1692e, 1692f. The FDCPA applies to "debt collectors," as defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts[*], or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Title 15 U.S.C. 1692e generally prohibits the use of any false, deceptive, or misleading representations or means to collect a debt. 15 U.S.C. § 1692e.

Petitioner argues that: "[a] plain reading of [the state] indicates that the only third parties with whom a debt collector may communicate with are its own attorney or the attorney consumer," and that "[t]he statute does not create a blanket exception for *all* attorneys of *all* creditors to communicate about a consumer's disputed debt." [Bl. Br. 33]. Therefore, Petitioner contends that the letter sent to the attorneys for the second mortgage holder, at the second mortgage holder's request, constitutes an

---

[*]The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. 1692a(5).The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. 1692a(3).

11

violation of 15 U.S.C. § 1692c(b).

Defendants respond with three primary arguments. First, the foreclosure action was not a "debt collection" under the statute, and therefore the events surrounding the mortgage foreclosure are not subject to the FDCPA. [Red Br. 37]. Second, that MCA's attorneys are not "third parties" under 15 U.S.C. § 1692c(b) because they a defendant with an interest in the mortgage foreclosure proceeding. [Red Br. 37-38]. Third, defendants argue that the communication was "reasonably necessary to effectuate a postjudgment remedy" because "when the priority of the involved mortgages remains to be determined by the same lawsuit, the mortgage information is necessary to a proper evaluation of potential post judgment remedies."[**] [Red Br. 38].

We need not address the Defendant's arguments because we can resolve the appeal on another ground. Our analysis in Vega v. McKay, 351 F.3d 1334 (11th Cir. 2003) (per curiam)[***] is instructive. In Vega, we affirmed the district court's ruling that the complaint package, consisting of a civil complaint, a summons to appear for

---

[**]This argument is unavailing: the communication occurred before there was a judgment in the foreclosure action, therefore; the communication could not reasonably be said to "effectuate a postjudgment remedy."

[***] Petitioner argues Vega should be overturned because it undermines the consumer rights under FDCPA when creditors attach FDCPA notices to the complaint or summons, but Vega is binding authority that can be overruled only by the Court sitting *en banc*. McGinley v. Houston, 361 F.3d 1328, 1331 (11th Cir. 2004) (citation omitted) (stating that the "Eleventh Circuit follows the absolute rule of the Fifth Circuit that a prior decision of the circuit panel or en bank cannot be overruled by a panel but only by the court sitting en banc").

12

a pretrial conference, and a FDCPA notice, was not an "initial communication" within the meaning of the FDCPA. Id. at 1335-36. Like the plaintiff-appellant in Vega, Acosta was served with a foreclosure complaint in which a FDCPA notice was attached. Based on our holding in Vega, that a foreclosure package including a FDCPA notice is not an "initial communication," under 15 U.S.C. § 1692g, it follows that a communication made by the a party in a foreclosure action or its counsel regarding the foreclosure action is not a "communication" under 15 U.S.C. § 1692c(b).

The FDCPa was passed in 1977 in order protect consumers from unfair debt collection practices. "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Additionally, the House Report on the FDCPA states: "a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs." S.Rep. No. 95-382, reprinted at 1977 U.S.Code Cong. & Admin.News 1695, 1699.

In this case, the communication between the attorneys for the two creditors does not implicate Acosta's privacy interests because the second mortgage holder would necessarily know about Acosta's default through the foreclosure proceedings.

In addition, the communication was not for the purpose of harassing or embarrassing Acosta, nor did it jeopardize his employment. Based on our reasoning in <u>Vega</u>, we hold that a communication issued from foreclosing party, or its counsel, regarding the foreclosure, does not violate 15 U.S.C. § 1692c(b), as such a communication is not subject to the FDCPA.[****]

For the foregoing reasons, we AFFIRM the district court.

---

[****]This holding does not limit the proscriptions of 15 U.S.C. § 1692c(b) to allow debt collectors, who are not mortgagees in foreclosure actions, to communicate with any other creditors the debtor may have. Such a premise would contravene many of protections offered by the FDCPA.